UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA


| M.M., *et al.*, | ) | |
|---|---|---|
| | ) | |
| Plaintiffs, | ) | 2:07-cv-01270- JWS |
| | ) | |
| vs. | ) | **ORDER AND OPINION** |
| | ) | |
| YUMA COUNTY, *et al.*, | ) | [Re: Motion at Docket 206] |
| | ) | |
| Defendants. | ) | |
| | ) | |

## I. MOTION PRESENTED

At docket 206, defendant Kindra Gonzales ("Gonzales") moves pursuant to Federal Rule of Civil Procedure 56 for summary judgment. Plaintiffs M.M., Ashley Ingraham ("Ingraham"), and Alex Garza (collectively "plaintiffs") oppose the motion at docket 213. Ingraham's reply is at docket 219. Oral argument was requested, but it would not assist the court.

## II. BACKGROUND

This lawsuit arises out of the premature birth of M.M. Ingraham is her mother, and Alex Garza is her father. Ingraham was taken into custody at the Yuma County Detention Center on September 7, 2006. Ingraham was examined at intake by Elanor

Snider ("Snider"). Ingraham informed Snider that she was pregnant, suffered from bipolar disorder, and was taking medication. Ingraham was given prenatal vitamins.

Gonzales' first interaction with Ingraham was at 10:39 a.m. on September 8, 2006. Gonzales was informed that Ingraham had an outburst at a court hearing that morning. She did not know whether Ingraham would be in jail for an extended period, but was informed that Ingraham was pregnant. She recognized a need for Ingraham's medical records, and ordered a vital sign check and a urinalysis to confirm the pregnancy.

Ingraham was brought back to the medical department at 10:56 a.m. after she complained that she was having contractions. Gonzales performed an abdominal exam and did not notice anything out of the ordinary. Ingraham asked to be taken to the hospital and stated that her water broke. Gonzales examined Ingraham's underwear and found "a small amount of yellow fluid with urine smell [and] no bloody show."[1] Gonzales reported that it did "not appear to be amniotic fluid" and that she was "unable to test" it.[2] Gonzales then contacted Dr. Jose Piscoya ("Piscoya"). Piscoya ordered that Ingraham be given Tylenol for pain and instructed that she not be sent to the hospital at that time. Gonzales placed Ingraham on behavior watch.

At 1:38 p.m. Gonzales recorded that Ingraham's pregnancy test came back positive and made a note that Ingraham had seemed to calm down after returning to her

---

[1] Doc. 207-1 at 6.

[2] *Id.* at 7.

cell. Gonzales had no further interaction with Ingraham or direct involvement with her treatment that is pertinent to the pending motion.

On September 9, 2006, it was reported that Ingraham was jumping on her belly in an effort to harm her unborn child. Ingraham yelled from her cell that she was in labor, was in pain, needed her medications, and that she had been experiencing vaginal bleeding for hours. At around 1:00 a.m. on September 10, 2006, Ingraham gave birth to M.M. in her cell.

Ingraham and Alex Garza, individually and on behalf of M.M., filed a lawsuit against the Yuma County Jail District, various jail officers, and various employees of Northend Health Associates, the company which had contracted to perform medical services at the jail. Plaintiffs allege that all defendants deprived them of their civil rights in violation of 42 U.S.C. § 1983 and that all defendants were negligent.

### III. STANDARD OF REVIEW

Summary judgment is appropriate where "there is no genuine issue as to any material fact and . . . the movant is entitled to judgment as a matter of law."[3] The materiality requirement ensures that "only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."[4] Ultimately, "summary judgment will not lie if the . . . evidence is such that a reasonable jury could return a verdict for the nonmoving party."[5] In resolving a motion

---

[3] Fed. R. Civ. P. 56(c)(2).

[4] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[5] *Id.*

-3-

for summary judgment, a court must view the evidence in the light most favorable to the non-moving party.[6] The reviewing court may not weigh evidence or assess the credibility of witnesses.[7] The burden of persuasion is on the moving party.[8]

## IV.  DISCUSSION

### A. Slosberg's Testimony Supports a Claim that Gonzales Breached the Applicable Standard of Care

The law of Arizona, the place where the relevant events transpired, applies to plaintiffs' negligence claim against Gonzales. In Arizona, "[i]n order for a plaintiff to establish the statutory elements to maintain a malpractice claim, he must normally utilize medical testimony by qualified physicians."[9] Expert medical testimony must be used unless "the negligence is so grossly apparent that a layman would have no difficulty in recognizing it."[10] The main thrust of Gonzales' argument is that she is entitled to judgment as a matter of law because plaintiffs' expert–Sandra Slosberg ("Slosberg")–stated that Gonzales did not breach the applicable standard of care.

At Slosberg's deposition, defendant's counsel questioned Slosberg about Gonzales' treatment of Ingraham. For instance, defendant's counsel asked Slosberg about the vital sign check and pregnancy test.[11] He sought to establish that Ingraham's

---

[6] *Lopez v. Smith*, 203 F.3d 1122 (9th Cir. 2000).

[7] *Dominguez-Curry v. Nevada Transp. Dept.*, 424 F.3d 1027, 1036 (9th Cir. 2005).

[8] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

[9] *Peacock v. Samaritan Health Svc.*, 765 P.2d 525, 528 (Ariz. Ct. App. 1988).

[10] *Id.* (internal quotations omitted).

[11] Doc. 207-1 at 5.

-4-

medical records were needed before medication could be administered and that those records had not yet arrived at the jail when Gonzales examined Ingraham.[12] Slosberg agreed that it would be important to use the medical records to determine what had been prescribed, in what dosage, at what intervals, and whether in combination with other drugs.[13] Defendant's counsel also asked Slosberg about the abdominal examination that Gonzales performed in response to Ingraham's complaints that she was having contractions and the fact that Gonzales checked Ingraham's underwear in response to Ingraham's statement that her water broke.[14] Slosberg conceded that she had no reason to believe Gonzales' abdominal examination did not involve appropriate palpation.[15]

Defendant's counsel then asked whether any of Gonzales' actions violated the applicable standard of care, and Slosberg opined that they did not.[16] To put the matter in more detail, the deposition transcript shows the following questions by Gonzales' lawyer and Slosberg's answers:[17]

> "Q: So what we have then is a situation where Nurse Gonzales checked for contractions, found none, counseled the patient, put her on behavioral watch, followed up on that, and had a pregnancy test run, vital signs run and indicated that if the were . . . To stay incarcerated, that she would set up an appointment with the obstetrician. All of that occurred, didn't it?

---

[12]Doc. 207-1 at 6.

[13]*Id.*

[14]*Id.*

[15]*Id.*

[16]Doc. 207-1 at 8.

[17]*Id.*

-5-

A: Yes.

Q: None of that was below the standard of care was it?

A: No.

Subsequent questions and answers, however, show that Slosberg did have one concern about Nurse Gonzales' actions:[18]

> Q: You would agree with me to a reasonable degree of medical probability that Nurse Gonzales did not violate the standard of care in everything that we have discussed so far, correct?
>
> A: Correct. But if she had the proper tools, it would have helped.
>
> Q: You don't know whether with the proper tools–and I assume you're talking about Nitrazine paper, correct?
>
> A: Correct.
>
> Q: You don't know one way or the other whether Nitrazine paper would have revealed amniotic fluid or not revealed amniotic fluid, that's true isn't it?
>
> A: No, but she would have had a determination and answer.

The court reads this last exchange (and the subsequent question and answer in the transcript to the same effect) to be potentially ambiguous. Slosberg might have meant that the determination and answer from the test could not have confirmed or ruled out the presence of amniotic fluid. Alternatively, Slosberg might have meant that Slosberg herself could not say what the test result would have shown, because no test was run. However, in light of Slosberg's previous statement that "if they had Nitrazine paper, they could test [the fluid] in a moment to find out whether it was amniotic fluid or not," the potential ambiguity disappears. Slosberg's answer suggests that the test would have

---

[18] *Id.*

been able to show whether or not Ingraham was at imminent risk of giving birth. Consequently, Slosberg's testimony that Gonzales should have tested the fluid found on Ingraham's underwear in order to meet the requisite standard of care is sufficient. Whether Nitrazine was available on-site is a disputed issue of fact.

With respect to Gonzales herself, as distinguished from the entire array of nurses who eventually examined or treated Ingraham, plaintiffs assert fault only in that Gonzales did not perform a test with Nitrazine paper, that she did not perform a mental health evaluation, and that she did not have medicines administered at the time Gonzales was in contact with Ingraham.[19] Plaintiffs have not produced expert testimony demonstrating that the latter two allegations fell below the standard of care. However, because Gonzales may have breached that standard when she did not test the fluid that she observed on Ingraham's underwear, summary judgment is inappropriate.

## B. Defendant's Causation Argument Was Not Raised in Her Motion

Gonzales also argues that plaintiffs have not produced any evidence of causation. That argument was raised for the first time in Gonzales' reply brief.[20] A "district court need not consider arguments raised for the first time in a reply brief."[21] Because plaintiffs have not had an opportunity to respond, the court declines to address Gonzales' causation argument.

---

[19] *Id.* at 5-6. Plaintiffs also say that Gonzales did not try to determine if Ingraham's water had broken, but offer not the slightest suggestion of what could have been done beyond the examination and observation made by Gonzales, and Slosberg's testimony is not cited in support of this proposition.

[20] Doc. 219 at 6–8.

[21] *Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007).

## V. CONCLUSION

For the reasons above, Gonzales' motion at docket 206 for summary judgment pursuant to Rule 56 is **DENIED**.

DATED this 10th day of November 2011.

/s/ JOHN W. SEDWICK
UNITED STATES DISTRICT JUDGE