UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | | |
|---|---|---|
| M.M., *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | 2:07-cv-01270 JWS |
| | ) | |
| vs. | ) | ORDER AND OPINION |
| | ) | |
| YUMA COUNTY, *et al.*, | ) | [Re: Motion at Docket 212] |
| | ) | |
| Defendants. | ) | |
| | ) | |

## I.  MOTION PRESENTED

At docket 212, defendant Dr. Jose Piscoya ("Piscoya") moves for summary judgment pursuant to Rule 56.  Other defendants (the "responding co-defendants")–among them, the Yuma County Jail District, Sheriff Ralph E. Ogden, and numerous officers–filed a response in opposition to the motion at docket 236.  Plaintiffs M.M., Ashley Ingraham ("Ingraham"), and Alex Garza (collectively "plaintiffs") oppose the motion at docket 238.  Piscoya's replies are at dockets 242 and 243.  Oral argument would not assist the court.

## II.  BACKGROUND

This lawsuit arises out of the premature birth of M.M.  Ingraham is M.M's mother, and Alex Garza is M.M's father.  Piscoya is a general practitioner who serves as the

Medical Director for Northend Health Associates ("Northend"). Northend contracted to provide medical services at the Yuma County Detention Center.

Ingraham was taken into custody at the Yuma County Detention Center on September 7, 2006. Ingraham was examined at intake by Elanor Snider ("Snider"). She informed Snider that she was pregnant, suffered from bipolar disorder, and was taking medication. Ingraham was given prenatal vitamins. The following day, at 10:39 a.m., Ingraham was examined by defendant Kindra Gonzales ("Gonzales"), Northend's Director of Nursing. Gonzales was informed that Ingraham had an outburst at a court hearing that morning. She was unaware whether Ingraham would be in jail for an extended period, but was told that Ingraham was pregnant, acknowledged the need for Ingraham's medical records, and ordered a vital sign check and a urinalysis to confirm the pregnancy.

Ingraham was brought back to the medical department at 10:56 a.m. after she complained that she was having contractions and needed her psychiatric medications. Gonzales performed an abdominal exam and did not notice anything out of the ordinary. Ingraham asked to be taken to the hospital and stated that her water broke. Gonzales examined Ingraham's underwear and found "a small amount of yellow fluid with urine smell [and] no bloody show."[1] Gonzales reported that it did "not appear to be amniotic fluid" and that she was "unable to test" it.[2] Gonzales then contacted Piscoya. Piscoya ordered that Ingraham be given Tylenol for pain and instructed that she not be sent to

---

[1] Doc. 207-1 at 6.

[2] *Id.* at 7.

the hospital at that time. Piscoya had no further involvement with Ingraham's treatment or care.

On September 9, 2006, it was reported that Ingraham was jumping on her belly in an effort to harm her unborn child. Ingraham yelled from her cell that she was in labor, was in pain, needed her medications, and that she had been experiencing vaginal bleeding for hours. At around 1:00 a.m. on September 10, 2006, Ingraham gave birth to M.M. in her cell.

Ingraham and Alex Garza, individually and on behalf of M.M., filed a lawsuit against the Yuma County Jail District, various jail officers, and various employees of Northend. Plaintiffs' complaint alleges that all defendants deprived them of their civil rights in violation of 42 U.S.C. § 1983 and that all defendants were negligent.

### III. STANDARD OF REVIEW

Summary judgment is appropriate where "there is no genuine issue as to any material fact and . . . the movant is entitled to judgment as a matter of law."[3] The materiality requirement ensures that "only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."[4] Ultimately, "summary judgment will not lie if the . . . evidence is such that a reasonable jury could return a verdict for the nonmoving party."[5] In resolving a motion for summary judgment, a court must view the evidence in the light most favorable to the

---

[3] Fed. R. Civ. P. 56(c)(2).

[4] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[5] *Id.*

non-moving party.[6] The reviewing court may not weigh evidence or assess the credibility of witnesses.[7] The burden of persuasion is on the moving party.[8]

## IV. DISCUSSION

### A. A.R.S. § 12-2604

In Arizona, "[i]n order for a plaintiff to establish the statutory elements to maintain a malpractice claim, he must normally utilize medical testimony by qualified physicians."[9] Expert medical testimony must be used unless "the negligence is so grossly apparent that a layman would have no difficulty in recognizing it."[10]

Piscoya argues that plaintiffs' expert, Dr. Robert Greifinger ("Greifinger") is barred from offering expert testimony on the standard of care applicable to Piscoya by A.R.S. § 12-2604(A)(3). Under that statute, in a medical malpractice action,

> a person shall not give expert testimony on the appropriate standard of . . . care unless the person is licensed as a health professional . . . and . . . [i]f the defendant is a general practitioner, the witness has devoted a majority of the witness's professional time in the year preceding the occurrence giving rise to the lawsuit to either . . . (a) Active clinical practice as a general practitioner [or] (b) Instruction of students in an accredited health professional school or accredited residency or clinical research program in the same health profession as the defendant.[11]

---

[6] *Lopez v. Smith*, 203 F.3d 1122 (9th Cir. 2000).

[7] *Dominguez-Curry v. Nevada Transp. Dept.*, 424 F.3d 1027, 1036 (9th Cir. 2005).

[8] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

[9] *Peacock v. Samaritan Health Svc.*, 765 P.2d 525, 528 (Ariz. Ct. App. 1988).

[10] *Id.* (internal quotations omitted).

[11] A.R.S. § 12-2604(A)(3).

The statute is substantive, not procedural.[12]

Piscoya maintains that Greifinger did not spend a majority of his professional time in active clinical practice as a general practitioner or instructing students in general practice in the year preceding M.M.'s birth. Plaintiffs do not respond to the merits of Piscoya's argument.[13] Instead, plaintiffs list Greifinger's expert qualifications irrespective of § 12-2604. While there might be little doubt as to Greifinger's capacity to testify as an expert in the absence of § 12-2604, those qualifications are not germane to the issues raised in Piscoya's motion.

Greifinger gave up active clinical practice in 1985.[14] There is no suggestion that Greifinger was an instructor at an accredited health professional school the year prior to M.M.'s birth.[15] Consequently, under § 12-2604, Greifinger is barred from offering expert testimony regarding the standard of care applicable to Piscoya. Greifinger's testimony is indispensable to plaintiffs' claim unless Piscoya's negligence would be apparent to a lay person.

---

[12] *Seisinger v. Siebel*, 203 P.3d 483, 493–94 (Ariz. 2009).

[13] *See* doc. 238 at 10–13. Plaintiffs argue that "[t]he statute relied on more particularly addresses specialists." *Id.* at 12. Plaintiffs are correct insofar as subpargaraphs (1) and (2) apply to medical malpractice claims against specialists. *See* A.R.S. § 12-2604(A)(1), (2). However, subparagraph (3) explicitly applies to claims against general practitioners. *Id.* § 12-2604(A)(3).

[14] Doc. 212-4 at 3.

[15] Plaintiffs do represent that Greifinger is an adjunct professor at the John Jay College of Criminal Justice, but that is not a health professional school.

### B. Piscoya's Negligence Would Not Be Apparent to a Layperson

Plaintiffs argue that summary judgment is inappropriate because their claim is not dependent on expert testimony. Plaintiffs cite *Peacock v. Samaritan Health Service*.[16] *Peacock* is distinguishable because it involved a hospital's failure to follow its own protocol.[17] The *Peacock* court determined that summary judgment in the defendant-hospital's favor was inappropriate based on that failure coupled "with reasonable inferences that [could] be drawn from the act of placing a reportedly suicidal patient in a fourth floor room with an unsecured window."[18] Here, an unattended childbirth at the Yuma County Detention Center may give rise to reasonable inferences that a duty of care was breached. However, there is no evidence that Northend–or more particularly, Piscoya–departed from its own policies. Without such evidence, there is no proxy for Greifinger's testimony regarding breach and consequently, *Peacock* does not dictate the result here.

The question is whether Piscoya's negligence would be apparent to a layperson. Here, Piscoya was telephoned by Gonzales during or after Ingraham's second visit to the medical department on September 8, 2006. Although it is unclear precisely what information was conveyed to Piscoya, the facts must be taken in the light most favorable to the plaintiffs. It would be to plaintiffs' advantage if Piscoya were informed

---

[16] 765 P.2d at 528.

[17] *Id.* at 529

[18] *Id.*

of all pertinent facts regarding Ingraham and her complaints. Therefore, the court will assume that Gonzales reported to him that Ingraham was complaining about her lack of psychiatric medication, that she was having contractions, and that her water had broke. The court will also assume that Gonzales told Piscoya that she had observed "a small amount of yellow fluid with urine smell [and] no bloody show"[19] that did "not appear to be amniotic fluid"[20] on Ingraham's underwear. Upon hearing this information, Piscoya instructed Gonzales not to send Ingraham to the hospital at that time and to give her Tylenol for pain.

It would not be apparent to a layperson that Piscoya was negligent. There is no evidence–apart from Greifinger's barred testimony–that Piscoya breached a duty owed to plaintiffs by relying on the examinations performed by Gonzales. While Piscoya could have traveled to the jail and examined Ingraham himself, or arranged for another medical doctor or physician's assistant to examine her, it is not evident that Piscoya *should* have. The facts alone do not compel the conclusion that Piscoya was negligent and, therefore, expert testimony establishing that Piscoya breached the applicable standard of care is necessary. Because plaintiffs' expert is not qualified under § 12-2604(A)(3), plaintiffs are unable to make the requisite showing.

### C. County Defendants' Duty Argument

The responding co-defendants devote considerable space in their brief to arguing that Piscoya owed Ingraham a duty of care. As Piscoya notes in his reply brief, whether

---

[19] Doc. 207-1 at 6.

[20] *Id.* at 7.

Piscoya owed a duty is not at issue–it is evident that he did and he does not argue otherwise. The dispute is over whether Piscoya breached that duty.

### D. Plaintiffs' § 1983 Claim

The responding co-defendants argue that summary judgment should not be granted as to plaintiffs' § 1983 claim against Piscoya. However, even though the complaint states that a § 1983 claim is asserted "against all defendants," it does not identify a provision of the Constitution that was violated.[21] Moreover, the substantive paragraphs under the § 1983 heading deal with the elements of negligence.[22] The court therefore concludes that the complaint does not state a § 1983 claim against Piscoya.[23] Even assuming that plaintiffs' complaint stated a § 1983 claim against Piscoya based on an alleged violation of the Eighth Amendment, plaintiffs have not presented any evidence supporting the notion that Piscoya was deliberately indifferent.

### V.  CONCLUSION

For the reasons above, Piscoya's motion at docket 212, for summary judgment pursuant to Rule 56 is **GRANTED**.

DATED this 10th day of November 2011.

>                               /s/
>                 JOHN W. SEDWICK
>           UNITED STATES DISTRICT JUDGE

---

[21] *See* 42 U.S.C. § 1983 (requiring a "deprivation of any rights, privileges, or immunities *secured by the Constitution*").

[22] *See, e.g.*, doc. 138-1 ¶¶ 62, 66, 67, 71.

[23] *Cf. Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009).