UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| M.M., *et al.*, ) | |
| ) | |
| Plaintiffs, ) | 2:07-cv-01270 JWS |
| ) | |
| vs. ) | ORDER AND OPINION |
| ) | |
| YUMA COUNTY, *et al.*, ) | [Re: Motion at Docket 223] |
| ) | |
| Defendants. ) | |
| ) | |

## I.  MOTION PRESENTED

At docket 223, defendant Radu Timis ("defendant" or "Timis") moves for partial summary judgment pursuant to Federal Rule of Civil Procedure 56.  Plaintiffs M.M., Ashley Ingraham ("Ingraham"), and Alex Garza ("Garza"; collectively "plaintiffs") oppose the motion at docket 244.  Defendant's reply is at docket 261.  Oral argument was not requested and would not assist the court.

## II.  BACKGROUND

This lawsuit arises out of the premature birth of M.M.  Ingraham is M.M's mother and Garza is M.M's father.  Timis is a registered nurse.  At the time of M.M's birth, Timis was employed by Northend Health Associates ("Northend").  Northend contracted to provide medical services at the Yuma County Detention Center.

Inghraham was taken into custody at the Yuma County Detention Center on September 7, 2006.  Ingraham was examined at intake by Elanor Snyder ("Snyder").  She informed Snyder that she was pregnant, suffered from bipolar disorder, and was taking medication.  Ingraham was given prenatal vitamins.  The following day, at 10:39 a.m., Ingraham was examined by defendant Kindra Gonzales ("Gonzales"), Northend's Director of Nursing.  Gonzales was informed that Ingraham had an outburst at a court hearing that morning.  She was unaware whether Ingraham would be in jail for an extended period, but was told that Ingraham was pregnant, acknowledged the need for Ingraham's medical records, and ordered a vital sign check and a urinalysis to confirm the pregnancy.

Ingraham was brought back to the medical department at 10:56 a.m. after she complained that she was having contractions and needed her psychiatric medications.  Gonzales performed an abdominal exam and did not notice anything out of the ordinary.  Ingraham asked to be taken to the hospital and stated that her water broke.  Gonzales examined Ingraham's underwear and found "a small amount of yellow fluid with urine smell [and] no bloody show."[1]  Gonzales reported that it did "not appear to be amniotic fluid" and that she was "unable to test" it.[2]  Gonzales then contacted Northend's Medical Director, Jose Piscoya ("Piscoya").  Piscoya ordered that Ingraham be given Tylenol for pain and instructed that she not be sent to the hospital at that time.

---

[1] Doc. 207-1 at 6.

[2] *Id.* at 7.

Timis's first interaction with Ingraham was on September 9, 2006, at around 3:30 p.m.  It was reported to Timis that Ingraham was jumping on her abdomen to trigger a miscarriage.[3]  Timis examined Ingraham's abdomen in the presence of Sergeant Joe Franklin ("Franklin").  Franklin told Ingraham that if she continued her behavior, it may be necessary to restrain her or place her on suicide watch.

Approximately an hour later, Timis reassessed Ingraham, again in Franklin's presence.  Ingraham was crying, told them that she was not a good mother because she was in jail, and that she wanted to terminate her pregnancy.  Ingraham requested pain medication for back, abdominal, and lower pelvic pain.  Timis suggested that Ingraham give her child up for adoption and told her again that suicide watch might be necessary.  Franklin told her that she could be charged with "premeditated manslaughter" if she successfully aborted her pregnancy in jail.[4]

Timis examined Ingraham again at 8:05 p.m.  Ingraham was complaining of lower pelvic pain and was bleeding.  She was also "crying hysterically that she want[ed] to keep the child."[5]  Timis observed three to four pads approximately one-third full of "fresh red blood" and bloody water in the toilet bowl.[6]  Timis noted that Ingraham's abdomen was "large, soft, [and] non tender," and that her "lower pelvic area [was] non

---

[3]Doc. 224-1 at 11–12.

[4]*Id.* at 11.

[5]*Id.*

[6]*Id.*

tender in palpation."[7]  Timis checked for uterine contractions and did not feel any.  Timis put Ingraham on medical watch, bed rest, and a pad count.

Timis examined Ingraham a fourth and final time at approximately 9:27 p.m. after Ingraham complained that her mucus plug had come out.  Timis observed a pad "with a filament of mucus that seemed to be from [Ingraham's] nose."[8]  Timis noted that Ingraham would be placed in a dry cell[9] and noted an instruction that if Ingraham miscarried, she was not to flush the "foetal product" down the toilet.[10]  Timis ordered that Ingraham be provided with a personal water jug for hydration.

Subsequently, Ingraham yelled from her cell that she was in labor, was in pain, needed her medications, and that she had been experiencing vaginal bleeding for hours.  At around 1:00 a.m. on September 10, 2006, Ingraham gave birth to M.M. in her cell.

Ingraham and Garza, individually and on behalf of M.M., filed a lawsuit against the Yuma County Jail District, various jail officers, and various employees of Northend, inlcuding Timis.  Plaintiffs' complaint alleges that all defendants deprived them of their civil rights in violation of 42 U.S.C. § 1983 and that all defendants were negligent.

---

[7]*Id.*

[8]*Id.*

[9]A dry cell is a cell in which an inmate cannot flush the toilet unless prison administrators turn on the water.  Doc. 262-1 at 6.  There is evidence that the dry cell was Timis's idea. Doc. 224-1 at 29.

[10]Doc. 224-1 at 11.

### III.  STANDARD OF REVIEW

Summary judgment is appropriate where "there is no genuine issue as to any material fact and . . . the movant is entitled to judgment as a matter of law."[11]  The materiality requirement ensures that "only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."[12]  Ultimately, "summary judgment will not lie if the . . . evidence is such that a reasonable jury could return a verdict for the nonmoving party."[13]  In resolving a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party.[14]  The reviewing court may not weigh evidence or assess the credibility of witnesses.[15]  The burden of persuasion is on the moving party.[16]

### IV.  DISCUSSION

**A.  Timis's Request to Strike References to Dr. Greifinger and Dr. Sinkhorn's Testimony**

In his reply brief, Timis moves to strike references to Dr. Greifinger and Dr. Sinkhorn's testimony.  The portions of those experts' testimony relied on by plaintiffs

---

[11] Fed. R. Civ. P. 56(c)(2).

[12] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[13] *Id.*

[14] *Lopez v. Smith*, 203 F.3d 1122 (9th Cir. 2000).

[15] *Dominguez-Curry v. Nevada Transp. Dept.*, 424 F.3d 1027, 1036 (9th Cir. 2005).

[16] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

has no bearing on disposition of Timis's motion for summary judgment and therefore need not be stricken from their response.

**B.  Whether Plaintiffs Have Presented Evidence Supporting a Conclusion that Timis was Deliberately Indifferent to a Serious Medical Need**

In order to prevail on their § 1983 claim, plaintiffs must show that Timis acted with "deliberate indifference to [Ingraham's] serious medical needs."[17]  Negligence in diagnosis or treatment–medical malpractice–does not necessarily rise to the level of deliberate indifference.[18]  Deliberate indifference requires subjective awareness of a serious medical need and a failure to adequately respond to that need.[19]

For purposes of this motion, Timis does not dispute that Ingraham had a serious medical need.  Timis argues that summary judgment on plaintiffs' § 1983 claim is nonetheless appropriate because Timis did not believe that Ingraham was in labor.  Because he was not subjectively aware that Ingraham was in labor, Timis argues, he could not have been deliberately indifferent to her serious medical need.

Plaintiffs' response is two-fold.  First, plaintiffs argue that Timis was aware of Ingraham's mental illness and the reports of her attempting to trigger a miscarriage and did not adequately respond.  Second, plaintiffs argue Timis was aware that there was a substantial risk that Ingraham was in labor and did not adequately respond.

---

[17] *Estelle v. Gamble*, 429 U.S. 97, 104 (1976).

[18] *Id.* at 106.

[19] *Simmons v. Navajo County*, 609 F.3d 1011, 1017–18 (9th Cir. 2010).

Plaintiffs have presented evidence from which a reasonable jury could conclude that Timis was aware of a serious medical need. Timis was aware of reports that Ingraham was "hitting her abdomen on [the jail cell] floor, hoping to start a miscarriage."[20] Timis was aware that Ingraham–at least at some point–"want[ed] to abort the pregnancy."[21] Timis was also aware that Ingraham might be susceptible to the influence of other inmates and noted that it may have been other inmates that prompted Ingraham to hit her abdomen on the floor.[22] Timis was also aware that Ingraham was bleeding, complaining of contractions, and that she claimed her mucus plug had come out.[23] Finally, Timis noted that "[i]n case of miscarriage, [Ingraham was] not to flush down the drain the foetal product."[24] In conjunction with awareness of the facts above, that statement could show that Timis was aware that birth or miscarriage was imminent or that Timis was aware that Ingraham's behavior imminently threatened the viability of her pregnancy.

In either event, that evidence could support a conclusion that Timis knew of and disregarded an excessive risk to Ingraham's health.[25] If a jury were to conclude only that Timis was aware that Ingraham's behavior put her and her pregnancy at serious

---

[20]Doc. 224-1 at 11–12.

[21]*Id.* at 11.

[22]*Id.*

[23]*Id.*

[24]*Id.* Timis argues that it was Franklin who had Ingraham placed in a dry cell, but this fact is disputed. *Compare* doc. 262-1 at 6 with doc. 224-1 at 29.

[25]*See Simmons*, 609 F.3d at 1017.

risk, it might conclude that Timis's response was inadequate. Similarly, if a jury were to conclude that Timis was subjectively aware that Ingraham was in labor or that labor was imminent, it might also find that Timis's response was inadequate.

## V.  CONCLUSION

For the reasons above, defendant's motion for partial summary judgment pursuant to Rule 56 is **DENIED**.

DATED this 16th day of November 2011.

>                    /s/
>          JOHN W. SEDWICK
>    UNITED STATES DISTRICT JUDGE